# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2657-17T1

K.J.,

     Plaintiff-Appellant,

v.

K.P.F.,

     Defendant-Respondent.

_____

Submitted November 27, 2018 – Decided December 4, 2018

Before Judges Fisher and Hoffman.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FV-21-0300-18.

DeTorres & DeGeorge, LLC, attorneys for appellant (Rosanne S. DeTorres, of counsel; Luther G. Jones, IV, of counsel and on the brief).

John J. Caleca, III, attorney for respondent.

PER CURIAM

On October 24, 2017, plaintiff K.J. (Kaitlyn, a fictitious name) filed this action, pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35, against defendant K.F. (Karl, also a fictitious name), alleging he assaulted her two days earlier when, after what she referred to as a "half-hug," he elbowed her to the nose; she also alleged that on that same occasion and on earlier occasions he harassed her through unwanted touching and repeated requests for sex.

The parties – unmarried parents of a child born three months earlier – and their counsel appeared for trial nine days after the action's commencement. After denying Kaitlyn's request for an adjournment, the judge heard their competing testimony. Kaitlyn testified to Karl's harassing words and actions and claimed he struck her nose with his elbow. During his testimony, Karl acknowledged he requested sex but not in a harassing way. He also testified that, due to darkness, she walked into him and that accidental bumping caused her injury; he denied elbowing her or any intent to cause injury. The judge concluded Kaitlyn failed to sustain her burden of proving by a preponderance of the evidence that a predicate act occurred and dismissed the action. The judge later denied her new attorney's reconsideration motion.

Kaitlyn appeals, arguing:

2

I.   THE TRIAL COURT ERRED BY REQUIRING PLAINTIFF TO CONSENT TO PARENTING TIME QUID PRO QUO IN EXCHANGE FOR AN ADJOURNENT OF THE TRIAL DATE.

II.   THE TRIAL COURT'S REFUSAL TO ADJOURN THE TRIAL VIOLATED PLAINTIFF'S DUE PROCESS RIGHTS.

III. THE TRIAL COURT'S FINDINGS ARE NOT SUPPORTED BY THE RECORD.

We find insufficient merit in these arguments to warrant further discussion in a written opinion, R. 2:11-3(e)(1)(E), adding only the following few comments.

Both parties were represented by counsel when they appeared for trial on November 2, 2017.  Although Kaitlyn instituted the action, her attorney sought an adjournment, claiming he had only been retained the day before.  Before ruling on that request, the judge suggested counsel attempt to reach a parenting-time agreement; the judge was concerned that an adjournment without such a stipulation would hamper Karl's ability to see their child. In short, the judge viewed an adjournment would prejudice Karl's rights absent a temporary parenting-time agreement.  When the parties later returned to the courtroom without an agreement, the judge denied the adjournment request and proceeded with the final hearing.  We find no abuse of discretion.

3

Most domestic violence matters involve events at which only the parties were present and the disposition of most such matters turns on the court's assessment of the parties' credibility. This case is no different. In denying the adjournment request, the judge observed there was nothing complicated about this case and little preparation was required. In addition, he recognized that it was Kaitlyn who commenced the action and she, therefore, had plenty of time – at least more than Karl – to retain counsel and prepare for a trial of this simple dispute. In responding to her counsel's request, the judge stated that these "are summary matters" intended to be resolved without discovery and on short notice to the defense.

Kaitlyn argues that her due process rights were infringed by the judge's denial of her adjournment request. In H.E.S. v. J.C.S., 175 N.J. 309, 323 (2001), the Court acknowledged that due process concepts apply in domestic violence actions. But it is clear that the rapidity with which such matters are addressed is more likely to cause a due process issue for the defendant, who is generally provided little time to prepare and respond. See N.J.S.A. 2C:25-29(a) (requiring a final hearing within ten days of the complaint's filing). The Court has recognized the authority of trial courts to adjourn final hearings when the statute's ten-day requirement "precludes meaningful notice and an opportunity

4

to defend." H.E.S., 175 N.J. at 323. But again, here, the adjournment request didn't come from the defense as usual but from Kaitlyn, who commenced the action. Viewing the issue through that prism, it cannot be said that Kaitlyn was deprived of either "meaningful notice" or "an opportunity to defend." See ibid. The domestic-violence plaintiff controls the timing of the action and the content of the complaint to which the other party must respond. Kaitlyn knew of what was being alleged the moment she commenced the action and she knew when the final hearing would occur. In denying her request for an adjournment, the judge was cognizant not only of those circumstances but also the prejudice that an adjournment would visit on Karl by the absence of a parenting-time agreement. The judge did not abuse his discretion in denying Kaitlyn's request for an adjournment.

We also reject Kaitlyn's argument that the judge's findings lack support in the evidence. The judge recognized that the parties engaged in an argument about sex, but he viewed those arguments as too inconsequential to constitute a predicate act. And while he correctly understood that the alleged elbowing event could not be viewed as contretemps, the judge found that claim sharply disputed and the evidence in equipoise, declaring: "I can't tell who's telling me the truth." In searching the record for something that might reveal the more truthful

5

version, the judge considered the parties' text messages and concluded they "seemed to corroborate [Karl's] version"[1] that any physical contact was purely accidental. Based on these circumstances, the judge determined that Kaitlyn failed to prove a predicate act. Our standard of review requires that we defer to the judge's findings. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). Trial judges see and hear the witnesses and evaluate the relevant evidence, not appellate courts. We will not intervene in such circumstances unless convinced the interests of justice require, id. at 412, and Kaitlyn has failed to so persuade us.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

___

[1] The text messages referenced during defense counsel's cross-examination of Kaitlyn included these statements from Karl: "I didn't do anything. You put your head on me and I stood still. You said ow." She responded by text with: "Your shoulder hit my nose." To which he replied, "I'm sorry you got a bloody nose. If I did anything to cause it I did not mean to."